**No. 26-11055**

---

# In The
# United States Court of Appeals
# For the Eleventh Circuit

---

TALENTSCALE INC.

*Plaintiff-Appellant,*

v.

AERY AVIATION LLC, et al.

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
CASE NO. 5:25-MC-00001-TKW-MJF

---

**INITIAL BRIEF OF THE APPELLANT**

---


Kenneth E. Chase
CHASE LAW & ASSOCIATES, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Tel: (305) 402-9800
kchase@chaselaw.com

*Counsel for Appellant Talentscale Inc.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iv

STATEMENT REGARDING ORAL ARGUMENT ........ vii

JURISDICTIONAL STATEMENT ........ 1

ISSUES PRESENTED ........ 2

STATEMENT OF THE CASE AND FACTS ........ 3

A. Talentscale Holds an Unpaid Federal Judgment, and Aery Still Has Not Paid Any Part of It ........ 3

B. Talentscale Served the Second Cleveland Clinic Writ, and Cleveland Clinic Answered That It Owed Aery, Not Cogent ........ 4

C. Talentscale Made the Jury Demand Even More Clearly Than the First Time ........ 5

D. Cogent Admitted That It Had Collateral, Not Ownership ........ 5

E. Cogent Did Not Declare Default, Accelerate, Foreclose, or Exercise Article 9 Remedies ........ 6

F. Aery Moved to Dissolve Without Identifying Any Untrue Allegation in Talentscale's Motion ........ 7

G. The Omnibus Memorandum Showed Why the Second Writ Was Stronger Than the First ........ 8

H. The District Court Dissolved the Writ Anyway ........ 9

STANDARD OF REVIEW ........ 10

SUMMARY OF THE ARGUMENT ........ 11

ARGUMENT ..... 13

I. THE DISTRICT COURT HAD NO POWER TO DECIDE THE SECTION 77.16 RIGHT OF PROPERTY ITSELF AFTER TALENTSCALE DEMANDED A JURY. ..... 13

II. COGENT DID NOT SATISFY SECTION 77.16 BECAUSE COGENT CLAIMED COLLATERAL, NOT OWNERSHIP. ..... 16

III. COGENT COULD NOT USE AN UNDECLARED DEFAULT
AND UNEXERCISED REMEDIES TO DEFEAT TALENTSCALE'S WRIT ..... 19

IV. AERY HAD NO INDEPENDENT BASIS TO DISSOLVE THE WRIT UNDER SECTION 77.07. ..... 24

V. THE EXPANDED RECORD REQUIRED A DIFFERENT RESULT, AND THE COURT DID NOT ADDRESS COGENT'S POST-LIEN ADVANCES. ..... 26

VI. THE DISTRICT COURT CREATED A GARNISHMENT-PROOF SUPER-DEBTOR. ..... 28

CONCLUSION ..... 31

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION ..... 32

CERTIFICATE OF SERVICE ..... 32

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aeronautics & Astronautics Services v. First Palm Beach International Bank*,
471 So. 2d 188 (Fla. 3d DCA 1985)....................18

*American Home Assurance Co. v. Weaver Aggregate Transport, Inc.*,
84 F. Supp. 3d 1314 (M.D. Fla. 2015) ....................10, 12, 22

*Arnold, Matheny & Eagan, P.A. v. First American Holdings, Inc.*,
982 So. 2d 628 (Fla. 2008) ....................10

*Arthur v. King*,
500 F.3d 1335 (11th Cir. 2007) ....................11

*Balfour Beatty Bahamas, Ltd. v. Bush*,
170 F.3d 1048 (11th Cir. 1999) ....................10, 23

*Charlotte Development Partners, LLC v. Tricom Pictures & Productions, Inc.*,
33 So. 3d 690 (Fla. 4th DCA 2009)....................15

*Davis v. F.W. Financial Services, Inc.*,
317 P.3d 916 (Or. Ct. App. 2013) .................... 10, 20-21, 23

*Ebsary Foundation Co. v. Barnett Bank of South Florida, N.A.*,
569 So. 2d 806 (Fla. 3d DCA 1990)....................22

*Frierson v. United Farm Agency, Inc.*,
868 F.2d 302 (8th Cir. 1989) .................... 10, 12, 19-22

*Gigliotti Contracting N., Inc. v. Traffic Control Prods. of N. Fla., Inc.*,
788 So. 2d 1013 (Fla. 2d DCA 2001).................... 18-19

*Gordon v. Flamingo Holding Partnership*,
624 So. 2d 294 (Fla. 3d DCA 1993)....................30

*H.B. London & Co. v. Wiles*,
695 So. 2d 876 (Fla. 2d DCA 1997).................... 18-19

*Legacy Bank v. Fab Tech Drilling Equipment, Inc.*,
566 S.W.3d 922 (Tex. App. 2018) ............................................ 10, 20-21, 23

*Matthews v. First Federal Savings & Loan Association of Englewood*,
571 So. 2d 2 (Fla. 2d DCA 1990)....................................................................2

*Mirage Resorts, Inc. v. Quiet Nacelle Corp.*,
206 F.3d 1398 (11th Cir. 2000) .................................................. 1, 12, 20-21

*Myers v. Christensen*,
776 N.W.2d 201 (Neb. 2009) ......................................................................23

*Navient Solutions, LLC v. BPG Office Partners XIII Iron Hill LLC*,
315 A.3d 1164 (Del. Super. 2024) ........................................................20, 23

*Oper v. Air Control Products, Inc. of Miami*,
174 So. 2d 561 (Fla. 3d DCA 1965)..............................................................14

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992) .....................................................................29

*Rinker Materials Corp. v. Palmer First National Bank & Trust Co. of Sarasota*,
361 So. 2d 156 (Fla. 1978) .........................................................................30

*RPS, Inc. v. Travel Max International, Inc.*,
823 So. 2d 243 (Fla. 4th DCA 2002)............................................................14

*Skop v. City of Atlanta*,
485 F.3d 1130 (11th Cir. 2007) ...................................................................10

*Stansell v. Revolutionary Armed Forces of Colombia*,
45 F.4th 1340 (11th Cir. 2022) ...................................................................14

*Sun Bank, N.A. v. Parkland Design & Development Corp.*,
466 So. 2d 1089 (Fla. 5th DCA 1985)..........................................................18

**Statutes**

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1963 .......... 1

Fla. Stat. § 77.07 .......... 2, 7, 12, 24-25

Fla. Stat. § 77.08 .......... 14

Fla. Stat. § 77.16 .......... 2-3, 5, 9-16, 18, 28, 30-31

Fla. Stat. § 671.201(39) .......... 17

Fla. Stat. § 679.2031(2)(b) .......... 17

Fla. Stat. § 679.306(3)(b) .......... 18

Fla. Stat. § 679.323(2) .......... 3, 8, 13, 26-27

**Rules**

Fed. R. App. P. 4(a)(1)(A) .......... 1

Fed. R. App. P. 32(a)(7)(B) .......... 32

Fed. R. Civ. P. 69(a) .......... 1, 10, 23

## REQUEST FOR ORAL ARGUMENT

Plaintiff-Appellant Talentscale Inc. respectfully believes that oral argument would be helpful in assisting the Court in this appeal which involves due process principles, Florida's garnishment procedures, and the application of Florida Statutes §§ 77.07, 77.16, and 679.323(2) to a disputed priority contest between a judgment creditor and a secured lender.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1291. The district court had subject-matter jurisdiction over this post-judgment garnishment proceeding under Federal Rule of Civil Procedure 69(a) and 28 U.S.C. § 1331. Appellant and Judgment Creditor Talentscale, Inc. ("Talentscale") obtained a federal judgment against Judgment Debtor Aery Aviation, LLC ("Aery") in the Eastern District of Virginia and registered it in the Northern District of Florida under 28 U.S.C. § 1963. Doc. 2; Doc. 225 at 1-2. Federal Rule of Civil Procedure 69(a) governs enforcement of judgments and directs a federal court to follow the procedure of the state where it sits, here Florida's garnishment statutes.

On March 2, 2026, the district court granted two motions to dissolve the writ of garnishment served on the Cleveland Clinic Foundation, dissolved that writ, and denied Talentscale's motion for final judgment in garnishment as to Cleveland Clinic. Doc. 225 ¶¶ 5-6. By those rulings, the district court conclusively resolved entitlement to the Cleveland Clinic receivable and ended the garnishment as to that garnishee. Talentscale filed a timely notice of appeal on March 31, 2026. Doc. 229. The notice was timely under Federal Rule of Appellate Procedure 4(a)(1)(A).

An order dissolving a writ of garnishment and denying final judgment settles the parties' rights to the garnished property and leaves nothing further for the district court to decide, and it is therefore final and appealable. *See Mirage Resorts, Inc. v.*

*Quiet Nacelle Corp.*, 206 F.3d 1398, 1401 (11th Cir. 2000); *Matthews v. First Fed. Sav. & Loan Ass'n of Englewood*, 571 So. 2d 2, 3 (Fla. 2d DCA 1990). This Court carried the same finality question with the companion appeal, No. 25-12618, and the same finality principles support jurisdiction here.

## **ISSUES PRESENTED**

1. Whether the district court erred in refusing to impanel a jury under section 77.16, where Talentscale demanded a jury twice in writing and again on the record and the parties disputed ownership, default, priority, post-lien advances, and the effect of the blocked-account arrangement.

2. Whether Cogent Bank satisfied section 77.16 as a matter of law, where Cogent swore that Cleveland Clinic owed the receivables to Aery, Cleveland Clinic identified the debt as owed to Aery, the district court found the debt due to Aery, and Cogent claimed only a security interest in collateral rather than ownership.

3. Whether Cogent's perfected security interest defeated Talentscale's garnishment lien, where Cogent had not declared Aery in default, accelerated, foreclosed, or exercised any Article 9 remedy, and instead continued to maintain Aery as a going concern.

4. Whether Aery had an independent basis to dissolve the writ under section 77.07, where Aery identified no untrue allegation in Talentscale's motion for the writ and Cleveland Clinic confirmed that it owed Aery.

5. Whether, at a minimum, the district court erred in resolving contested issues and denying final judgment without the fact-finding that section 77.16 requires and without applying Florida Statutes section 679.323(2) to Cogent's post-lien advances.

## STATEMENT OF THE CASE AND FACTS

### A. Talentscale Holds an Unpaid Federal Judgment, and Aery Still Has Not Paid Any Part of It.

Talentscale holds a federal judgment against Aery in the principal amount of $1,142,467.20. Doc. 194 at 1. Talentscale registered the judgment in the Northern District of Florida on January 13, 2025. Doc. 2. Aery still has made no payments on the judgment despite substantial income and numerous requests for payment. Doc. 194 at 2.

Aery operates an active business, performing a range of aviation services for government agencies, hospital systems, and other customers. Cogent Bank and Aery told the district court that Aery needed working capital for current and future contracts. Doc. 195 at 4. Bank records reflected an average of $712,743 per month from Cleveland Clinic for June through August 2025, and Aery's own testimony placed monthly Cleveland Clinic income between $500,000 and $900,000. Doc. 194 at 4-5.

Aery's federal contracts generated gross receipts of approximately $109 million in 2024. Doc. 209 at 10. While Aery represented that it lacked the ability to

pay Talentscale, Aery's controlling member Scott Beale directed more than $11.7 million from Aery to himself, to entities he owns or controls, and to assets that benefited him personally. Doc. 209 at 7-8. Those payments moved through Cogent's credit facility and blocked-account structure. while Cogent allowed Aery to keep drawing and paying others instead of Talentscale. Doc. 209 at 8-10.

### B. Talentscale Served the Second Cleveland Clinic Writ, and Cleveland Clinic Answered That It Owed Aery, Not Cogent.

On December 23, 2025, the district court issued a writ of garnishment to Cleveland Clinic. Talentscale served the writ on December 24, 2025. Doc. 168; Doc. 172. Cleveland Clinic answered on January 9, 2026. Doc. 183.

Cleveland Clinic did not say it owed money to Cogent. Cleveland Clinic answered that it was indebted to Aery for services rendered in the amount of $11,897.00 for invoice numbers 5249 and 5250. Cleveland Clinic also answered that it may be indebted to Aery in the approximate amount of $34,552.44 for invoice numbers 5272 and 5273. Doc. 183 at 1-2. Cleveland Clinic stated that Aery had apparently performed additional services for which Aery likely would request payment. Doc. 183 at 3.

Cleveland Clinic then filed a response and updated accounting. Cleveland Clinic took no position on the merits and did not oppose Talentscale's final judgment motion, Aery's motion to dissolve, or Cogent's motion to dissolve. Doc. 206 at 1-3. Cleveland Clinic confirmed that all debts owed to Aery between service of the writ

and Cleveland Clinic's answer totaled $46,449.44. Cleveland Clinic also identified another approximately $195,959.49 in services that were invoiced or validated after the answer but were for services rendered up to January 9, 2026. Cleveland Clinic retained approximately $242,408.93 under the writ. Doc. 206 at 3.

### C. Talentscale Made the Jury Demand Even More Clearly Than the First Time.

On December 24, 2025, the same day Talentscale served the Cleveland Clinic writ, Talentscale filed a notice invoking its right to a jury trial under section 77.16 in connection with any past, present, or future motion to dissolve or quash any writ of garnishment in the action. Doc. 174 at 1-2. Talentscale quoted section 77.16 and expressly invoked its jury right. Doc. 174 at 1-2.

Talentscale did it again on January 12, 2026, filing a second notice titled Judgment Creditor Talentscale, Inc.'s Notice of Invocation of Right to Jury Trial and Express Request for Jury Trial Under Fla. Stat. section 77.16(1). Doc. 185 at 1-2. At the February 27, 2026 hearing, Talentscale again demanded a jury. Hr'g Tr. 45:14-47:25. Talentscale never waived a jury.

### D. Cogent Admitted That It Had Collateral, Not Ownership.

Cogent filed an affidavit and a motion to dissolve under section 77.16. Cogent framed the dispute as one over funds owed by Cleveland Clinic to Aery. Doc. 195 at 1. Cogent stated that the Cleveland Clinic receivables were subject to Cogent's first-priority perfected security interest. Doc. 195 at 1-2. Cogent stated that

Cleveland Clinic's answer identified money that Cleveland Clinic owed to Aery. Doc. 195 at 2-4.

Cogent described its lending relationship with Aery. In June 2021, Cogent and Aery entered into a revolving line of credit, a business loan agreement, and a security agreement. Cogent originally loaned Aery up to $9 million. Cogent later increased the line to $18 million on May 5, 2025. Doc. 195 at 4. Aery pledged accounts receivable and other collateral. Cogent filed a UCC financing statement in Virginia on June 24, 2021. Doc. 195 at 6-8.

Cogent also described the blocked account. Aery's account debtors send payments to an account titled Cogent Bank FBO Aery Aviation LLC, and Cogent sweeps the funds to reduce the line of credit. Doc. 195 at 8-10. But Cogent never truthfully alleged that Cleveland Clinic owed the debt to Cogent and not Aery. Cogent called the receivables Aery's accounts receivable, and Cogent called its interest a security interest in collateral. Doc. 195 at 6-10. Cleveland Clinic likewise answered that it was indebted to Aery, not Cogent. Doc. 183 at 1-2.

### E. Cogent Did Not Declare Default, Accelerate, Foreclose, or Exercise Article 9 Remedies.

The second record made the lack of default even clearer than the first time. Cogent did not declare Aery in default. Cogent did not accelerate the loan. Cogent did not foreclose on the Cleveland Clinic receivables. Cogent did not stop funding Aery. Cogent continued to sweep receipts, collect fees, and re-advance funds so

Aery could operate. Doc. 193 ¶¶ 10-11, 20-22; Doc. 209 at 6, 29-30. Cogent's counsel confirmed at the hearing that Cogent had not declared an official default under the loan documents. Hr'g Tr. 59:11-18. The district court acknowledged in its written order that Cogent had not declared default and had not taken action to foreclose its security interest. Doc. 225 paragraph 5.

Cogent instead treated Aery as a borrower in good standing, kept extending credit, and kept sweeping payments and re-advancing money. Doc. 193 paragraphs 10-11, 22. Doc. 209 at 6, 29-30. Cogent collected a 1.5 percent draw fee on advances and interest at rates as high as prime plus 2.25 percent. Doc. 209 at 10. That is a lending relationship, not ownership.

### F. Aery Moved to Dissolve Without Identifying Any Untrue Allegation in Talentscale's Motion.

Aery moved to dissolve under section 77.07. Doc. 200. Under section 77.07, the defendant and any other person having an ownership interest in the property may move to dissolve a writ by stating that an allegation in the plaintiff's motion for writ is untrue. Aery did not identify any untrue allegation.

Talentscale's motion for writ alleged that Talentscale believed Cleveland Clinic had collectible assets or funds in its possession within the jurisdiction of the court. Doc. 162 at 2. Cleveland Clinic confirmed that belief. Cleveland Clinic answered that it was indebted to Aery for services rendered. Doc. 183 at 1-2. Aery confirmed that it issues regular invoices to Cleveland Clinic for Aery's services.

Doc. 200-1 at 2-3. The only real dispute concerned Cogent's claimed priority, not the truth of Talentscale's allegation.

### G. The Omnibus Memorandum Showed Why the Second Writ Was Stronger Than the First.

Talentscale filed an omnibus memorandum that put the changed record before the district court. Doc. 209. Cogent holds a lien in Aery's receivables, not ownership. Even Cogent described the funds as owed by Cleveland Clinic to Aery and described the receivables as Aery's accounts receivable encumbered by Cogent's security interest. Doc. 209 at 2-6.

Talentscale also explained why the factual record had materially changed since the first Cleveland Clinic writ. At the May 2025 hearing, Cogent and Aery had presented the relationship as one involving recent nonpayment and a fully funded $15 million line. Cogent's later records showed 46 payments in March and April 2025 totaling $5,923,136.08, and the parties had entered into a May 5, 2025 amendment increasing the line to $18 million. Doc. 209 at 6-7, 28-30. Those facts made the lack of default even clearer. Doc. 209 at 6, 23-26, 28-30.

Talentscale further argued that Cogent's post-lien advances were subordinate under section 679.323(2) to the extent Cogent made discretionary advances after Talentscale's competing lien arose and not pursuant to a qualifying prior commitment. Doc. 209 at 23-26. Talentscale identified $6,336,853.46 in additional advances between March 31 and May 21, 2025, and argued that the May 5, 2025

increase merely expanded Cogent's discretion rather than creating a binding obligation to lend. Doc. 209 at 24-26.

### H. The District Court Dissolved the Writ Anyway.

At the February 27, 2026 hearing, Talentscale argued that the blocked account was just a lockbox, that the receivables were due to Aery and not Cogent, and that Cogent offered no evidence of default. Hr'g Tr. 68:14-72:25. Talentscale also argued that the district court's contrary rule would allow a company to receive tens of millions of dollars and still avoid garnishment because every dollar ran through a lender-controlled structure while the lender declined to declare default. Hr'g Tr. 66:14-68:13.

The district court recognized that Talentscale had a federal judgment that remained unpaid. Hr'g Tr. 113:5-10. The district court recognized that Cogent had increased the line to $18 million on May 5, 2025. Hr'g Tr. 113:11-17. The district court recognized that Cogent had not declared default and had not foreclosed. Hr'g Tr. 114:1-3. The district court also recognized that the money was due to Aery because Aery provided the services. Hr'g Tr. 114:20-25.

The district court still held that Cogent's perfected security interest defeated Talentscale's writ. Hr'g Tr. 115:1-6. The district court rejected Talentscale's section 77.16 argument, found no jury required, and granted Cogent's and Aery's motions to dissolve. Hr'g Tr. 115:7-15, 120:1-7, 128:4-129:17. The district court then entered

a written order and incorporated its oral findings. Doc. 225 at 2. In paragraph 5, the district court dissolved the Cleveland Clinic writ because Cogent's security interest had priority over Talentscale's judgment lien notwithstanding the fact that Cogent had not declared Aery's line-of-credit loan in default or taken action to foreclose its security interest in the CCF receivables. Doc. 225 paragraph 5. In paragraph 6, the district court denied Talentscale's motion for final judgment against Cleveland Clinic. Doc. 225 paragraph 6.

The district court rejected *Weaver* and *Frierson* in footnote 6 and cited two out-of-state decisions, *Legacy Bank v. Fab Tech Drilling Equipment, Inc.*, 566 S.W.3d 922 (Tex. App. 2018), and *Davis v. F.W. Financial Services, Inc.*, 317 P.3d 916 (Or. Ct. App. 2013). Doc. 225 at 4 n.6. Florida law and the record here required the opposite result.

## STANDARD OF REVIEW

This Court reviews de novo the district court's interpretation of Florida garnishment law, Article 9, Federal Rule of Civil Procedure 69, and the legal effect of undisputed loan documents and garnishment filings. *See Balfour Beatty Bahamas, Ltd. v. Bush*, 170 F.3d 1048, 1050 (11th Cir. 1999). This Court reviews de novo whether section 77.16 required a jury and whether Cogent satisfied the statutory predicate. *See Arnold, Matheny & Eagan, P.A. v. First Am. Holdings, Inc.*, 982 So. 2d 628, 632 (Fla. 2008). This Court likewise reviews de novo whether the district

court correctly found no genuine dispute of material fact. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). This Court reviews any discretionary ruling for abuse of discretion, and a district court abuses its discretion when it applies the wrong legal standard. *See Arthur v. King*, 500 F.3d 1335, 1339 (11th Cir. 2007).

## SUMMARY OF THE ARGUMENT

The creditor should have been permitted to utilize Florida's garnishment laws as they were intended. Talentscale made the jury demand twice before the Cleveland Clinic motions were heard and again at the hearing. Cleveland Clinic admitted that it owed money to Aery. Cogent admitted that it had a security interest in Aery's accounts receivable. Aery admitted that it issued the invoices. Cogent did not declare a default, did not accelerate, and did not foreclose. The district court itself recognized that the money was due to Aery for Aery's services and that Cogent had not declared default or foreclosed. The district court dissolved the writ anyway.

The district court erred for several independent reasons. First, Talentscale had a statutory jury right. Under section 77.16, after a third person makes the required property claim and affidavit, the court shall impanel a jury to determine the right of property between the claimant and plaintiff unless a jury is waived. Talentscale did the opposite of waiver. Talentscale demanded a jury before Cogent filed the motion, demanded a jury again in writing, and renewed the demand on the record. The parties disputed ownership, the effect of the lockbox, default, priority, post-lien advances,

and the changed record since the first Cleveland Clinic writ. The district court could not weigh those disputes and decide them itself.

Second, Cogent never satisfied section 77.16. That statute allows a third-party claimant to trigger a right-of-property proceeding only when the claimant makes an affidavit that the debt due by the garnishee is due to the claimant and not to the defendant, or that the property in the garnishee's hands is the claimant's property. Cogent never made that claim because it could not. Cleveland Clinic owed the debt to Aery. Cogent had a lien in Aery's receivables. A lien is not ownership.

Third, even if Cogent held priority, dissolution was the wrong remedy. A perfected security interest subordinates a garnishment. It does not extinguish it. The garnishor takes the funds subject to the lien, and the senior creditor recovers only when it later declares default and enforces. *Frierson* states that rule, *Mirage Resorts* involved the same remedy, and the out-of-state decisions the district court cited confirm it. Cogent has declared no default and enforced no Article 9 remedy, so it has no present claim, and the funds should go to Talentscale now. Independently, a lender cannot maintain the debtor as a going concern while preventing other creditors from exercising valid liens. *Weaver* and *Frierson* explain why. That is what Cogent did here.

Fourth, Aery's motion fails for a separate reason. Aery moved under section 77.07, but Aery did not show that any allegation in Talentscale's motion for writ was

untrue. Talentscale alleged that it believed Cleveland Clinic held collectible assets or funds. Cleveland Clinic confirmed that belief when it answered that it owed money to Aery.

Fifth, the expanded record required a different result from the first Cleveland Clinic writ. Cogent's records contradicted the earlier factual picture. Cogent had received 46 payments totaling $5,923,136.08 in March and April 2025, increased the line to $18 million on May 5, 2025, continued to fund Aery, continued to collect fees, and never declared default. Talentscale also preserved a post-lien advances argument under section 679.323(2). The district court did not meaningfully address it.

Sixth, the district court created a garnishment-proof super-debtor. Under that rule, Aery can receive tens of millions of dollars, route all revenue through a friendly secured lender, pay insiders and litigation counsel, keep drawing on the line, and still tell judgment creditors that no receivable can ever be garnished. That is not the law. It should not become the law.

## <u>ARGUMENT</u>

### I. THE DISTRICT COURT HAD NO POWER TO DECIDE THE SECTION 77.16 RIGHT OF PROPERTY ITSELF AFTER TALENTSCALE DEMANDED A JURY.

Section 77.16 uses mandatory language. When a third person claims that the debt due by the garnishee is due to that person and not the defendant, or that the

property in the garnishee's hands is that person's property, and makes an affidavit to that effect, the court shall impanel a jury to determine the right of property between the claimant and the plaintiff unless a jury is waived. Talentscale never waived a jury.

The demand here was clearer than the first time. Talentscale filed a written notice on December 24, 2025 invoking its right to a jury trial under section 77.16. Doc. 174 at 1-2. Talentscale filed a second notice on January 12, 2026 that expressly requested a jury trial and invoked section 77.16 again. Doc. 185 at 1-2. At the hearing, Talentscale renewed the demand on the record. Hr'g Tr. 45:14-47:25.

That right is enforced under Florida law. In *Oper v. Air Control Products, Inc. of Miami*, the Third District allowed a non-jury ruling only because the material facts were admitted and the dispute was purely legal. 174 So. 2d 561, 563-64 (Fla. 3d DCA 1965). In *RPS, Inc. v. Travel Max International, Inc.*, the Fourth District reversed a dissolution order because the trial court failed to impanel a jury on the ownership issue after a timely demand. 823 So. 2d 243, 244-45 (Fla. 4th DCA 2002). This Court has recognized a jury-trial right in Florida garnishment proceedings and has explained that the right turns on whether the evidence created a material factual issue. *See Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1356 (11th Cir. 2022) (recognizing the jury-trial right under Fla. Stat. § 77.08).

This case is the opposite of waiver. In *Charlotte Development Partners, LLC v. Tricom Pictures & Productions, Inc.*, the Fourth District found waiver because the claimant accepted the court's invitation to resolve the merits without a jury, tried the case, and invoked section 77.16 only after the proceeding went poorly. 33 So. 3d 690, 693 (Fla. 4th DCA 2009). Talentscale demanded a jury at the outset and preserved the demand at the hearing.

The record presented important factual disputes. They disputed whether the blocked account changed ownership or merely collection mechanics. They disputed whether Aery retained rights in the receivables for Talentscale's lien to attach. They disputed whether Cogent's refusal to declare default mattered under Cogent's own structure. They disputed whether Cogent's post-lien advances affected priority. They disputed whether Cleveland Clinic would pay these receivables into Cogent's account given that Cleveland Clinic had paid Aery directly before. Doc. 209 at 6-12, 18-21, 23-31. Hr'g Tr. 68:14-72:25. The district court dismissed those disputes as speculation. In doing so, the district court weighed evidence that section 77.16 assigns to the jury.

Cogent tried to bypass the statute by casting everything as a pure question of law. Cogent never moved for summary judgment under Rule 56. Cogent never filed an affidavit that satisfied the ownership predicate of section 77.16. Talentscale told the district court that Cogent was trying to convert a narrow section 77.16 procedure

into an abstract Article 9 priority adjudication. Doc. 209 at 20-21. That is exactly what happened.

Cogent's own documents showed that Cogent was not actually claiming ownership. Doc. 209 at 18-21, 30-31. The district court nevertheless resolved the issues itself. Because section 77.16 required a jury to resolve the disputed right of property, because Talentscale demanded a jury, and because Talentscale never waived, the refusal to impanel a jury independently requires reversal.

## II. COGENT DID NOT SATISFY SECTION 77.16 BECAUSE COGENT CLAIMED COLLATERAL, NOT OWNERSHIP.

Section 77.16 provides a narrow procedure. A third person may proceed only if that person claims that the debt due by a garnishee is due to that person and not to the defendant, or that the property in the garnishee's hands is that person's property, and makes an affidavit to that effect. Cogent did not make that claim.

Cogent told the district court that this dispute involved competing claims over funds owed by Cleveland Clinic to Aery Aviation, LLC. Doc. 195 at 1. Cogent then described the receivables as amounts that Cleveland Clinic owes Aery, as Aery's accounts receivable under the loan documents, and as Cogent's collateral encumbered by its first-priority security interest. Doc. 195 at 3-4, 7-8. Cleveland Clinic answered that it was indebted to Aery. Doc. 183 at 1. Aery admitted that Cleveland Clinic owes Aery. Doc. 200-1 paragraph 5. The district court found the

funds due to Aery. Hr'g Tr. 114:20-25. Those are lienholder allegations, not ownership allegations.

Florida law recognizes the difference between a lien and ownership. Cogent holds a garden-variety security interest and nothing more. A security interest is an interest in personal property or fixtures that secures payment or performance of an obligation. Fla. Stat. § 671.201(40). A security interest attaches only if the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party. Fla. Stat. § 679.2031(2)(b). The concept of collateral presupposes that the debtor, not the secured party, owns or has rights in the encumbered property. To be sure, collateral exists only because the debtor has rights in the property.

Routing payments through the blocked account did not turn Aery's receivables into Cogent's property. Routing receivable payments into an account titled Cogent Bank FBO Aery Aviation LLC is a mechanical arrangement, a lockbox, and a means of collection. Doc. 193 paragraph 17 and Ex. 7 §§ 1-2. It does not mean Cogent owned the receivable before payment. It is Aery's property, subject to Cogent's security interest. If Cogent truly owned the receivables in the first instance, the parties would have had no reason to title the account Cogent Bank FBO Aery Aviation LLC. Cleveland Clinic would simply pay Cogent in its own name. Doc. 209 at 8-9, 16-18.

Florida law confirms the difference between a true assignment of ownership and a security arrangement governed by Article 9, and it helps Talentscale, not Cogent. *Sun Bank* confirms that Article 9 governs assignments of accounts, whether absolute or for security, and that a garnishing judgment creditor qualifies as a lien creditor under the UCC. *Sun Bank, N.A. v. Parkland Design & Dev. Corp.*, 466 So. 2d 1089, 1091, 1093 (Fla. 5th DCA 1985). Assignment language does not erase the statutory distinction between ownership and security.

The district court read *H.B. London & Co. v. Wiles* as if *London* allowed a secured creditor to obtain dissolution on the strength of a security interest alone. *London* does not support that reading. First, the Second District reversed a summary garnishment judgment because the trial court "did not allow the company to present evidence in support of its claim," and it remanded to conduct an evidentiary hearing. 695 So. 2d 876, 877, 879 (Fla. 2d DCA 1997). *London* therefore supports fact-finding, not summary dissolution. Second, *London* involved a stipulated default. *Id.* at 878. Cogent has never declared default here. Third, *London* turned on proceeds tracing under Florida Statutes section 679.306(3)(b), a fact question the court remanded. *Id.* at 878-79, *following Aeronautics & Astronautics Servs. v. First Palm Beach Int'l Bank*, 471 So. 2d 188, 190 (Fla. 3d DCA 1985). The district court made no proceeds-tracing finding here. Fourth, *London* expressly declined to decide whether a claimant must satisfy section 77.16's affidavit requirement because the

parties waived that issue. 695 So. 2d at 878. Florida courts treat the affidavit as mandatory. *See Gigliotti Contracting N., Inc. v. Traffic Control Prods. of N. Fla., Inc.*, 788 So. 2d 1013, 1016 (Fla. 2d DCA 2001).

At most, *London* lets a secured creditor appear and prove priority through the procedures the statute supplies. *London* does not let a lienholder obtain summary dissolution after conceding that the garnishee owes the debt to the debtor. Cogent never filed an affidavit stating that the Cleveland Clinic debt was due to Cogent and not Aery, and Cogent never swore that the receivables were Cogent's property. The district court should have denied Cogent's motion on that basis alone.

## III. COGENT COULD NOT USE AN UNDECLARED DEFAULT AND UNEXERCISED REMEDIES TO DEFEAT TALENTSCALE'S WRIT.

The district court stated its core holding in paragraph 5 of the March 2 order. Cogent's perfected security interest in the Cleveland Clinic receivables had priority over Talentscale's judgment lien notwithstanding the fact that Cogent had not declared Aery's line-of-credit loan in default or taken action to foreclose its security interest in the CCF receivables. Doc. 225 paragraph 5. Even if Cogent held priority, dissolution did not follow, and the ruling was error for two independent reasons.

First, and dispositively, dissolution was the wrong remedy even if Cogent held priority. A perfected security interest does not extinguish a junior creditor's garnishment. It subordinates it. *Frierson* states the rule. The judgment creditor takes the funds subject to the secured party's interest, and the secured party may trace and

recapture the funds when it later declares default and accelerates. *Frierson v. United Farm Agency, Inc.*, 868 F.2d 302, 304-05 (8th Cir. 1989). The Eleventh Circuit recounted the same disposition in *Mirage Resorts, Inc. v. Quiet Nacelle Corp.*, 206 F.3d 1398, 1399-1400 (11th Cir. 2000). On materially similar facts, the district court there denied the senior creditor's motion to dissolve because it had not declared the debtor in default, directed the garnishee to pay the garnishor, and preserved the senior creditor's security interest and its later Article 9 remedies. *Id.* The merits of that disposition were never appealed, and the Eleventh Circuit resolved the later appeal on jurisdictional grounds. *Id.* at 1400.

The out-of-state decisions the district court cited in footnote 6, and the related cases, confirm the remedy rather than defeat it. Each adopts a trace-and-recapture rule under which the garnishor takes the funds subject to the senior interest, which continues in them and supports later recapture. In *Navient Solutions, LLC v. BPG Office Partners XIII Iron Hill LLC,* the court did not dissolve the writs. 315 A.3d 1164, 1168, 1171-72 (Del. Super. Ct. 2024). *Navient* helps Talentscale, not Cogent. The court left the writs in place and declared them junior only after the secured creditor had suffered an actual event of default, declared default, accelerated the loan, and revoked the debtor's license to collect rents before the writs were served. *Id*. In *Legacy Bank v. Fab Tech Drilling Equipment, Inc.*, the court awarded the garnished funds to the secured creditor, which by the time of decision had declared

default and foreclosed. 566 S.W.3d 922, 925, 929 (Tex. App. 2018). And *Davis v. F.W. Financial Services, Inc.*, the decision *Legacy Bank* followed, holds that the garnishor takes the funds and the security interest continues in them, subject to later recapture. 317 P.3d 916, 924-26 (Or. Ct. App. 2013). None of these decisions gave a senior creditor the funds, or dissolved a writ, absent an actual default.

Cogent has done neither. It has not declared Aery in default, has not accelerated, and has not foreclosed. Doc. 225 paragraph 5. Doc. 193 paragraphs 10-11, 20-22. Under the take-subject-to rule that *Frierson*, *Mirage Resorts*, and the district court's own authorities apply, Cogent has no present claim to the Cleveland Clinic receivables, and Talentscale is entitled to them now, subject only to whatever interest Cogent may later establish if it ever declares default and enforces. The district court reasoned that garnishment would be pointless because the funds would return to Cogent. Hr'g Tr. 117:16-118:25. That reasoning assumes the very step Cogent has refused to take. By dissolving the writ outright and clearing the way for the funds to be swept to Cogent, the district court gave Cogent more than trace and recapture allows. It gave Cogent the benefit of the collateral without the default declaration and enforcement that every one of these decisions makes the condition of recovery. That is reversible error on any view of the priority question.

Second, and independently, Cogent forfeited the priority it asserts by choosing to keep Aery operating rather than enforce. A secured creditor cannot "refuse to

exercise its rights under the security agreement, thereby maintaining [the debtor] as a going concern, while it impairs the status of other creditors by preventing them from exercising valid liens." *Am. Home Assurance Co. v. Weaver Aggregate Transp., Inc.*, 84 F. Supp. 3d 1314, 1326 (M.D. Fla. 2015) (*quoting Frierson*, 868 F.2d at 305). Cogent continued to fund Aery, continued to sweep and re-advance operating revenue through its blocked-account structure, and continued to collect fee and interest income, all while using an unenforced lien to keep Talentscale from receivables that Cleveland Clinic admitted were owed to Aery. Doc. 183 at 1. Doc. 193 paragraphs 10-11, 22. Doc. 209 at 6, 9-12, 23-26, 29-30. Cogent's own senior vice president admitted that "[t]here has been default according to our loan agreement," but that "the bank has not formally defaulted Aery," because Cogent "worked diligently with Aery's team to come up with a plan that protects the bank's capital and has a path towards our debt repayment." Doc. 150-1 at 21. Cogent made what its witness called a "tough call" and increased the credit line "to be able to keep Aery in my opinion from having to close its doors." Doc. 150-1 at 25. Cogent's loan agreement also required Aery to pay and discharge its obligations before they became delinquent or in default, and Cogent allowed Aery to violate that covenant as to Talentscale. Doc. 193 Ex. 3, section 5.08; Doc. 209 at 31. Florida authority ties extraordinary collection rights to an actual default. In *Ebsary Foundation Co. v. Barnett Bank of South Florida, N.A.*, the bank's setoff prevailed because the debts it

set off were in default at the time of the garnishment. 569 So. 2d 806, 806 (Fla. 3d DCA 1990). Here the district court found no default, and Cogent's counsel confirmed the same at the hearing. Doc. 225 paragraph 5. Hr'g Tr. 59:11-18.

This Court need not resolve the split between the waiver approach and the trace-and-recapture approach, because dissolution is wrong under both. If the Court reaches the question, these decisions do not govern this case. None involved a performing, non-defaulted loan. In each, an actual default had already occurred, and the only question was whether the creditor's delay in formally enforcing cost it priority. *See Navient*, 315 A.3d at 1171-72; *Legacy Bank*, 566 S.W.3d at 925; *Davis*, 317 P.3d at 921. One of the decisions the district court's authorities rest on is further removed from this case, because it involved a bank's setoff against the debtor's own deposit account rather than a lien on receivables owed by a third party. *See Myers v. Christensen*, 776 N.W.2d 201, 205-06 (Neb. 2009). No decision the district court cited holds that a lender may keep a solvent borrower operating, decline to declare any default, and still convert an unenforced security interest into a complete bar to garnishment.

Florida law governs these garnishment proceedings under Rule 69. *Balfour Beatty*, 170 F.3d at 1050. The district court suggested that priority might be governed by Virginia law rather than Florida law, but that makes no difference here, because Virginia and Florida have both adopted Article 9, and the take-subject-to rule and

the priority of a perfected security interest over a later lien creditor apply the same way under either State's Code. A lender that has not declared default, has not foreclosed, and continues to treat the borrower as a going concern cannot convert its unexercised security interest into a total shield against garnishment of receivables the garnishee admits are owed to the debtor, and it cannot obtain that shield through dissolution when even its own authorities would leave the writ standing. This Court should reverse.

## IV. AERY HAD NO INDEPENDENT BASIS TO DISSOLVE THE WRIT UNDER SECTION 77.07.

Aery's motion does not save the district court's ruling. Aery moved under section 77.07. That statute allows the defendant and any other person having an ownership interest in the property, as disclosed by the garnishee's answer, to move to dissolve by stating that an allegation in the plaintiff's motion for writ is untrue. Aery did not do that.

Talentscale alleged that it believed Cleveland Clinic had collectible assets or funds in its possession within the district. Doc. 162 at 2. Cleveland Clinic confirmed the basis for that belief. Cleveland Clinic answered that it was indebted to Aery for services rendered. Doc. 183 at 1-2. Cleveland Clinic later retained a total of approximately $242,408.93 under the writ. Doc. 206 at 3. Aery itself confirmed that it issues regular invoices to Cleveland Clinic. Doc. 200-1 at 2-3.

Aery therefore did not identify an untrue allegation. Aery did not show that Cleveland Clinic lacked funds, that Cleveland Clinic was not indebted to Aery, or that Talentscale's belief was false. Aery simply borrowed Cogent's priority theory. A priority dispute with a secured lender is not the same thing as proving that Talentscale's allegations in support of the writ were false.

Aery also tried to have it both ways. Aery argued that the Cleveland Clinic receivables were swept into Cogent's blocked account and that Aery had no dominion or control over them. Doc. 200-1 at 4. If Aery truly had no ownership interest, then Aery could not rely on a statute that requires the defendant or another person with an ownership interest to move to dissolve. If Aery did have an ownership interest, as Cleveland Clinic's answer and Cogent's own papers show, then Talentscale's writ allegation was true. Either way, Aery did not satisfy section 77.07.

Aery's notice argument also does not justify dissolution. Aery appeared, moved, briefed, and argued. The district court did not dissolve the writ because Talentscale failed to notify Aery of Cleveland Clinic's answer. The district court dissolved the writ based on Cogent's priority. Doc. 225 paragraph 5. Aery cannot defend the judgment on a theory that does not cure the defect in its own section 77.07 motion.

## V. THE EXPANDED RECORD REQUIRED A DIFFERENT RESULT, AND THE COURT DID NOT ADDRESS COGENT'S POST-LIEN ADVANCES.

The district court stated that it had dissolved the first Cleveland Clinic writ for essentially the same reasons as the second. Doc. 225 at 2. Talentscale's point below was that the second record was materially different. That difference matters.

Talentscale showed that Cogent's own records contradicted the factual picture the district court received in the first round. Counsel had represented in May 2025 that Aery made no payments in approximately 60 days and that the line was fully funded at about $15 million. Doc. 209 at 6-7, 28-29. Later-produced records showed 46 payments in March and April 2025 totaling $5,923,136.08 and a May 5, 2025 amendment increasing the line to $18 million. *Id.* Those facts undermined any premise that an immediate threat jeopardized Cogent's position. Cogent's January 27, 2026 affidavit confirmed that Cogent kept extending credit and treated Aery as a borrower in good standing. Doc. 193 paragraphs 10-11, 22. Doc. 209 at 6, 29-30.

The district court should not have concluded that default did not matter without grappling with that stronger record. The absence of default mattered more, not less, once the record showed that Cogent continued to fund Aery and continued to profit from the facility. Cogent did not act like a secured creditor trying to protect collateral after default. Cogent acted like a lender preserving a profitable borrower while blocking a judgment creditor.

Talentscale also preserved a separate statutory argument under Florida Statutes section 679.323(2). That statute subordinates a security interest to the rights of a person who becomes a lien creditor to the extent the security interest secures an advance made more than 45 days after the person becomes a lien creditor, unless the advance is made without knowledge of the lien or pursuant to a commitment entered into without knowledge of the lien. Fla. Stat. § 679.323(2).

Talentscale identified $6,336,853.46 in additional advances that Cogent made between March 31 and May 21, 2025, after Talentscale had served the first Cleveland Clinic writ. Doc. 209 at 23-26. Those advances followed the March 31, 2025 lien, and they are the subject of the first appeal, No. 25-12618. The district court recognized as much. It stated that the section 679.323(2) argument might have more merit as to the March writ, and it said it would adjudicate that question on the March writ if this Court directed it. Hr'g Tr. 116:5-18, 127:7-9.

As to the writ on review here, the district court construed section 679.323(2) against Talentscale as a matter of law. It read the phrase without knowledge of the lien to refer only to the December 23, 2025 lien created by the writ under review, and it found that the advances tied to the Cleveland Clinic receivables were made pursuant to commitments that predated that lien. Hr'g Tr. 116:5-21, 125:5-11, 126:13-127:6. Talentscale preserves its disagreement with that construction. The statute's reference to the lien is not limited to the newest writ, and draws taken on a

revolving facility after a lien attaches are themselves advances within the meaning of section 679.323(2). Those are questions of statutory construction that this Court reviews de novo, and they are best resolved together with the first appeal, where the district court itself located the stronger version of the argument. Hr'g Tr. 116:8-18, 127:7-9.

The May 5, 2025 credit increase makes the point. Cogent and Aery increased the line to $18 million after Talentscale had already served the first Cleveland Clinic writ and after Cleveland Clinic had already admitted that it owed Aery $921,471.42. Doc. 209 at 23-26. Cogent and Aery then used the expanded facility to keep Aery operating while Talentscale remained unpaid. The district court should not have allowed that structure to swallow garnishment law.

## VI. THE DISTRICT COURT CREATED A GARNISHMENT-PROOF SUPER-DEBTOR.

Under the district court's rule, a judgment debtor with a cooperative secured lender can receive tens of millions of dollars, route every dollar through a lender-controlled account, keep drawing on a line of credit, and keep operating as a going concern. The lender can sweep the revenue, charge fees, charge interest, re-advance money, and let the debtor pay insiders, lawyers, and preferred creditors. The debtor can then say that no customer receivable can ever be garnished because the secured debt remains larger than each receivable.

That is not garnishment law. That is a private exemption from collection. Florida exemptions come from law, not from a debtor's credit facility. A blanket lien and a lockbox cannot erase a federal judgment. Neither section 77.16 nor Article 9 requires Florida courts to insulate a revenue-generating debtor from ordinary garnishment while the secured lender continues to profit from the arrangement.

The facts here show the danger. Aery owed Talentscale more than $1.1 million and still paid nothing. Cleveland Clinic continued to owe Aery for Aery's services. Cogent increased Aery's line to $18 million after the first writ. Aery and Cogent continued operating through the blocked-account structure. Talentscale showed more than $11.7 million in transfers to Beale, Beale-related entities, and assets that benefited Beale. Doc. 209 at 7-8. Talentscale also showed that Aery's federal contracts generated approximately $109 million in gross receipts in 2024. Doc. 209 at 10. Cogent's own January 27, 2026 affidavit showed that Aery had roughly $1.02 million of unused credit under the facility, about the amount of the judgment, so Aery had the means to pay Talentscale and did not. Doc. 193 paragraph 22; Doc. 209 at 30. Cogent never declared default, and Aery continued as a going concern. Yet the district court held that Talentscale could not garnish even the amounts Cleveland Clinic was holding under the writ.

That result conflicts with the strong interest in enforcing money judgments. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1478 (9th Cir.

1992). Cogent chose a bargain in which Aery remained a going concern, kept rights in its receivables, and was never placed in default. Cogent cannot turn that bargain into a permanent bar against garnishment.

Equity also supports reversal. Florida courts may impose an equitable lien upon proof of fraud, misrepresentation, or affirmative deception, *see Rinker Materials Corp. v. Palmer First Nat'l Bank & Trust Co. of Sarasota*, 361 So. 2d 156, 159 (Fla. 1978), or where the defendant has been unjustly enriched, *see Gordon v. Flamingo Holding P'ship*, 624 So. 2d 294, 297 (Fla. 3d DCA 1993). Talentscale requested an equitable lien on the Cleveland Clinic funds below. Doc. 209 at 31-33. Talentscale showed that Aery used the Cogent structure to keep operating and paying others while refusing to pay Talentscale. Doc. 209 at 7-8. Talentscale also showed that Cogent knew about Talentscale's claim and nevertheless allowed Aery to keep using the facility to pay others. Doc. 209 at 8; Doc. 150-1 at 21. The district court should not have rewarded that conduct by dissolving the writ as a matter of law.

The cleanest remedy is reversal with instructions to deny Cogent's and Aery's motions to dissolve and enter final judgment of garnishment against Cleveland Clinic for the amounts Cleveland Clinic retained under the writ. At minimum, this Court should reverse and remand for a jury trial under section 77.16 and for further proceedings on Talentscale's request for final judgment and equitable relief.

**CONCLUSION**

Talentscale respectfully requests that the Court reverse the March 2, 2026 order insofar as the district court dissolved the Cleveland Clinic writ and denied Talentscale's motion for final judgment of garnishment. The Court should remand with instructions to deny Cogent's and Aery's motions to dissolve, enter final judgment of garnishment for the amounts Cleveland Clinic retained, and award further relief necessary to enforce Talentscale's judgment. Alternatively, the Court should remand for a jury trial under section 77.16 and further proceedings consistent with this Court's opinion.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By: */s/ Kenneth E. Chase*

Kenneth E. Chase
Florida Bar No. 17661
kchase@chaselaw.com
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Telephone: (305) 402-9800

*Counsel for Plaintiff /Appellant*
*Judgment-Creditor Talentscale, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

I hereby certify that this Initial Brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 7,281 words.

By: *[/s/ Kenneth E. Chase]*
Kenneth E. Chase

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on July 1, 2026 which automatically sends notice to all counsel or parties of record.

By: */s/ Kenneth E. Chase*
Kenneth E. Chase